Alfred VELTRI, Plaintiff–Appellee,

v.

BUILDING SERVICE 32B–J PENSION FUND and The Trustees of the Building Service 32B–J Pension Fund, Defendants–Appellants.

Docket No. 03–9287.

United States Court of Appeals, Second Circuit.

Argued: Aug. 30, 2004.

Decided: Dec. 27, 2004.

Robert J. Bach, New York, NY, for Plaintiff–Appellee.

Ira A. Sturm, Raab, Sturm & Goldman, LLP, New York, NY, for Defendants–Appellants.

JACOBS and POOLER, Circuit Judges *.

* The Honorable Ellsworth Van Graafeiland, who was a member of this panel and voted with the majority, passed away following argument in this case. This appeal is being decided by the remaining two members of the panel, who are in agreement. *See* Local Rule § 0.14(b).

## BACKGROUND

POOLER, Circuit Judge.

Appellant Building Service 32B–J Pension Fund ("the Fund") is a multi-employer pension trust fund within the coverage of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, whose participating members work in the building services industry ("the industry") in and around New York City. Appellee Alfred Veltri entered covered employment in April 1957. Until December 1969 Veltri worked as an elevator operator and doorman. Veltri returned to the industry in June 1980 after an 11–year hiatus and again worked as an elevator operator and doorman until his retirement in 1992.

On March 27, 1992, a few months prior to his expected retirement, Veltri submitted to the Fund an application for a retirement pension, seeking benefits for his service from 1957 to 1969 and from 1980 to 1992. On August 11, 1992, the Fund informed Veltri in writing that he would receive a pension of $209.00 monthly from April 1, 1992, to June 1, 1992, and $212.00 thereafter. Veltri and his wife countersigned this notice as required. On May 5, 1993, Veltri wrote to the Fund inquiring why his pension was only $212.00 and why he was not credited with his years of work between 1957 and 1969. On May 25, 1993, the Fund responded that his employment prior to 1970 was not credited due to the Fund's break-in-service rule, which caused him to lose all credit prior to the break. This letter referred to an enclosed copy of the Fund's "Pension Fund booklet" and invited Veltri to call with any questions, but while the booklet did contain a section

discussing administrative appeals, the letter did not reference that section of the booklet, nor did it specifically mention Veltri's right to appeal the Fund's decision not to credit his pre–1970 service. Veltri did not immediately appeal this determination, and thereafter has accepted monthly payments of $212.00 until the present day. Veltri contends that during the eleven years since receiving this letter he has called the Fund on several occasions but has never received a response.

In early 2001, Veltri again inquired by letter about the amount of his pension. The Fund responded that it excluded his work prior to 1970 because he did not work in the industry for three consecutive years after leaving in 1969 and thus incurred a break in service under the Fund's rules. On May 1, 2001, Veltri, through his newly retained attorney, requested the Fund's record of his service. The Fund did not respond to this letter. Veltri's attorney again wrote on June 25, 2001, with a copy to the Department of Labor. After the Fund provided Veltri with the information he sought, Veltri's attorney wrote again in August 2001, to inform the Fund that its records of Veltri's service were incorrect. Veltri received no response to this letter.

By letter from his attorney to Kevin Duffy, then Director of the Fund, dated November 26, 2001, Veltri filed a claim for additional pension benefits. He received no response. By letter from his attorney dated March 7, 2002, Veltri filed an appeal with the Trustees of the Fund, again claiming additional benefits. He again received no response. On June 4, 2002, Veltri filed the instant lawsuit. On summary judgment, the district court denied the Fund's motion and granted Veltri's cross-motion, directing appellants to recalculate Veltri's benefits.

In its summary judgment motion the Fund argued that Veltri's suit, filed eleven years after the Fund's initial denial of benefits for his pre–1970 service, was time-barred by the applicable six-year statute of limitations, and that in any event Veltri failed to state a claim under ERISA because his absence from covered employment for over ten years after December 1969 constituted a "break in service" causing him to forfeit, under the terms of the plan, credit for his pre–1970 service. The district court rejected these contentions, holding that the Fund's failure to comply with federal regulations requiring it to notify Veltri of his right to administrative appeal and to maintain an action in court challenging its denial of his claim to benefits entitled Veltri to equitable tolling of the statute of limitations, and that under this Court's holding in *McDonald v. Pension Plan of the NYSA–ILA Pension Trust Fund*, 320 F.3d 151 (2d Cir.2003), the Fund was prohibited from disregarding Veltri's pre–1970 service. Although for slightly different reasons, as we find that the district court was correct on both points, we affirm.

## DISCUSSION

### I. Equitable Tolling

Statutes of limitations are generally subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for her lateness in filing. *See Haekal v. Refco, Inc.*, 198 F.3d 37, 43 (2d Cir.1999). Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances. *See Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). For example, equitable tolling has been held appropriate where plaintiff filed and

served defective papers before the expiration of the statutory period, *see American Pipe & Const. Co. v. Utah,* 414 U.S. 538, 558, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), or where defendant induced plaintiff to file late through trickery or deception, *see id.* at 559, 94 S.Ct. 756; *Glus v. Brooklyn E. Dist. Terminal,* 359 U.S. 231, 235, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959). Equitable tolling has also been held appropriate where plaintiff was somehow prevented from learning of her cause of action within the statutory period.

■■■ Where defendant is responsible for concealing the existence of plaintiff's cause of action, this Court has held equitable tolling appropriate. *See Pearl v. City of Long Beach,* 296 F.3d 76, 80 n. 3 (2d Cir.2002) (collecting cases). While we have frequently referred to this doctrine as "fraudulent concealment," defendants' conduct need not be actually fraudulent. "The doctrine has been applied ... where the facts show that the defendant engaged in conduct, *often* itself fraudulent, that concealed from the plaintiff the existence of the cause of action." *Cerbone v. International Ladies' Garment Workers' Union,* 768 F.2d 45, 48 (2d Cir.1985) (emphasis added). The relevant question is not the intention underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action. *See Pearl,* 296 F.3d at 82; *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 451 (7th Cir.1990) (Posner, J.).

■■■ Here, federal regulations required defendants to provide Veltri with notice of his right to file an administrative appeal of his adverse benefits determination and of the right to file an action challenging that determination in court. Specifically, 29 C.F.R. § 2560.503–1(g)(1) states that the required notice to the claimant of an adverse benefit determination

shall set forth, in a manner calculated to be understood by the claimant—

. . . .

.(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action . . . .

This regulation was promulgated pursuant to Congress's mandate that employee benefit plans covered by ERISA "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied," 29 U.S.C. § 1133(1), and "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review," *id.* § 1133(2). This specific mandate was part of Congress's general response to the "lack of employee information and adequate safeguards concerning" the operation of such plans, which threatened the "continued well-being and security of millions of employees and their dependents." *Id.* § 1001(a). Congress therefore intended, through ERISA, to "protect ... the interests of participants in employee benefit plans and their beneficiaries, by ... establishing standards of conduct, responsibility, and obligation for fiduciaries ... and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." *Id.* § 1001(b).

It is uncontested that defendants failed to fully comply with the regulatory notice requirements. In particular, while defendants contend that enclosure of a copy of their Pension Fund booklet with their letter denying Veltri's claim to additional benefits sufficed to discharge their burden to notify him of his right to an administrative appeal, defendants did nothing that even approached compliance with the requirement that they inform Veltri of his right to file an action in court.

While the Fund's failure to inform Veltri of his right to file an action in court challenging its denial of benefits for his pre–1970 service is not the kind of concealing activity that would normally be held to mandate equitable tolling, the Fund's nondisclosure must be viewed in light of the regulatory notice requirement and of Congress's policy of protecting the interests of pension plan participants by ensuring "disclosure and reporting to participants" and "ready access to the Federal courts." *Id.* The notice regulation assumes that a reasonable beneficiary would not otherwise be aware of the existence of a cause of action, and the congressional policy favors placing a burden of disclosure on pension plans and adopting an approach of caution before closing the courthouse door. In light of the regulation and Congress's express policy, we hold that failure to comply with the regulatory obligation to disclose the existence of a cause of action to the plan participant whose benefits have been denied is the type of concealment that entitles plaintiff to equitable tolling of the statute of limitations.

■ The district court applied a somewhat different analysis, apparently holding that Veltri's cause of action had yet to accrue and that the statute of limitations had not begun to run until, at the earliest, his attorney's letter, couched as an "appeal" of the Fund's denial of benefits, in March 2002. The district courts in this Circuit have disagreed over the precise time of accrual of a cause of action under ERISA for improper denial of benefits, with some holding that a cause of action accrues when administrative remedies are exhausted, *see Mitchell v. Shearson Lehman Bros., Inc.,* No. 97 Civ. 0526, 1997 WL 277381, at \*3 (S.D.N.Y. May 27, 1997), and others holding that a cause of action accrues on the initial denial of benefits, *see Patterson–Priori v. Unum Life*

*Ins. Co.,* 846 F.Supp. 1102, 1108 (S.D.N.Y. 1994). We have previously held that where notice is given that fails substantially to comply with the requirements of 29 C.F.R. § 2560.503–1(g), the time for administrative appeal is tolled. *See Burke v. Kodak Ret. Income Plan,* 336 F.3d 103, 107 (2d Cir.2003). Defendants did enclose with their May 25, 1993, letter to Veltri a copy of their pension fund booklet-a 69-page document containing a single paragraph on page 14 discussing the right to file an administrative appeal. The letter itself, which did state the Fund's reasons for denying Veltri's claim to additional benefits based on his pre–1970 service, did not advise him of his right to appeal that denial. We have previously held to be inadequate notice a letter sent together with a handbook containing a discussion of appeal procedures, where the letter referenced only pages that did not discuss appeal procedures. *See Burke,* 336 F.3d at 108. Here, similarly, merely enclosing the booklet with the letter-which contained no reference to specific pages in the booklet and no reference to appeal procedures-did not satisfy the regulation's requirement that the Fund notify Veltri, "in a manner calculated to be understood by the claimant," 29 C.F.R. § 2560.503–1(g)(1), of his right to file an administrative appeal. Defendants who give inadequate notice of the right to administratively appeal a denial of benefits are thus precluded from refusing to accept an untimely administrative appeal, or from asserting failure to exhaust administrative remedies as a defense. *See Burke,* 336 F.3d at 108. Therefore, if we agreed with those courts holding that a cause of action for improper denial of benefits under ERISA accrues when administrative remedies are exhausted, as the district court below held, we would have to conclude that, because he never received substantially compliant notice, Veltri's time for administrative appeal–180 days under

the plan rules-never began to run. Veltri's cause of action would therefore have accrued at the earliest in March 2002, when he exhausted the appeal process by his attorney's letter.[1]

■ The starting point in seeking an answer to the question of when Veltri's cause of action accrued is well established. As a general matter, a claim for improper denial of benefits accrues "when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries." *Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan,* 698 F.2d 593, 598 (2d Cir.1983). The question that has divided the district courts of this Circuit is that of whether a repudiation that remains appealable, and therefore subject to alteration, constitutes a *clear* denial of benefits. *Compare Mitchell,* 1997 WL 277381, at *3 *with Patterson–Priori,* 846 F.Supp. at 1108. At least two other courts of appeals have stated that a cause of action does not accrue until the administrative process has been exhausted. *See Daill v. Sheet Metal Workers' Local 73 Pension Fund,* 100 F.3d 62, 67 (7th Cir.1996); *Martin v. Construction Laborer's Pension Trust,* 947 F.2d 1381, 1386 (9th Cir.1991). The district court here apparently agreed.

■ We need not decide, however, which of the two approaches is technically correct. In applying equitable tolling based on defendants' concealing conduct, the question of whether defendant's concealment also prevents accrual of a cause of action so that the statute is not actually tolled, but rather, never begins to run, is an unnecessary exercise insofar as our resolution of it would have no effect on the result. This Court has therefore not found it necessary to resolve this issue. *See Pearl,* 296 F.3d at 82 (explaining that this Court has applied equitable tolling analysis where cause of action has "in some sense accrued earlier"); *Pinaud v. County of Suffolk,* 52 F.3d 1139, 1156 (2d Cir.1995) (same). Judge Mukasey in *Mitchell,* similarly, noted that even were he to hold that the cause of action accrued on the initial denial of benefits, the lack of substantial compliance with the notice regulation would require that the statute be equitably tolled, which amounts to simply an alternative characterization of the same result. 1997 WL 277381, at *5. We agree with this observation in *Mitchell.* Because we hold equitable tolling appropriate where defendants fail to comply with the regulatory requirement that they provide notice to beneficiaries of the right to bring an action in court challenging a denial of benefits, we need not resolve precisely when the underlying cause of action accrues.[2] Nor is it necessary for us to consider the Fund's argument that Veltri actually exhausted his administrative remedies in 1993 by sending a letter to the Fund questioning its denial of benefits for his pre–1970 service.

■ We share the Fund's concern that to allow tolling of the statute of limitations "in perpetuity," would thwart actuarial prediction of plan liability and thereby

---

1. And for the same reason, appellants cannot claim that Veltri failed properly to exhaust his administrative remedies.

2. For the same reason, we do not find the reasoning in *Maki v. Allete, Inc.,* 383 F.3d 740 (8th Cir.2004), a recent case brought to our attention by appellants in a letter submitted pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, to be decisive in this case. *Maki* held that a claim that pension plan term of service computation rules were discriminatory in violation of Title VII of the Civil Rights Act of 1964 and the Pregnancy Discrimination Act accrued when plan beneficiaries first became eligible for benefits. It did not discuss equitable tolling or the ERISA notice regulations.

threaten the ability of pension plans to prepare in advance to meet financial obligations simultaneously to both beneficiaries and adverse litigants. Equitable tolling is an extraordinary remedy because if applied too liberally it threatens to undermine the purpose of statutes of limitations of allowing potential defendants predictability and ultimate repose. However, it must be borne in mind that our holding is grounded in equitable principles. We are not establishing a simple mechanical rule that failure to notify a claimant of her right to bring an action in court automatically tolls the statute of limitations. Thus, for example, a plaintiff who has actual knowledge of the right to bring a judicial action challenging the denial of her benefits may not rely on equitable tolling notwithstanding inadequate notice from her pension plan. We therefore approve the approach of the First Circuit Court of Appeals in *I.V. Services of America, Inc. v. Inn Development & Management, Inc.*, 182 F.3d 51 (1st Cir.1999), despite what may appear on a superficial reading to be an implicit rejection of our analysis. In *I.V. Services* the court of appeals affirmed the district court's holding that acknowledged that lack of substantial compliance with the notice regulation tolled the time for administrative appeal, but nevertheless refused to extend that toll to the three-year statute of limitations on the underlying ERISA action. But the court of appeals relied heavily on the fact, found by the district court, that plaintiffs had actual knowledge that a cause of action had accrued at least five years before they filed their lawsuit. *See I.V. Services*, 182 F.3d at 57. We agree that a plaintiff with actual knowledge of her right to sue may not rely on equitable tolling.

 Similarly, the equitable defenses of laches and estoppel remain available to defendants seeking to avoid unfair sur-prise from the filing of untimely claims by plaintiffs who seek to rely on equitable tolling on the basis of defective notice. "A party asserting the equitable defense of laches must establish both plaintiff's unreasonable lack of diligence under the circumstances in initiating an action, as well as prejudice from such a delay." *King v. Innovation Books*, 976 F.2d 824, 832 (2d Cir.1992). While the notice regulation and congressional policy are among the circumstances to consider in determining whether plaintiff has shown an unreasonable lack of diligence, they are not the only factors. Thus we are not concerned that our holding will encourage delays of extreme length, such as the delay of over 50 years marshaled in one of appellants' hypotheticals. Also available to defendants in such cases is the doctrine of equitable estoppel, which "is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir.2001). The three elements defendants must establish to invoke equitable estoppel are (1) a misrepresentation by the plaintiff, (2) reasonable reliance by the defendant, and (3) prejudice. *See id.* Silence may in some cases be sufficient to establish a misrepresentation. For example, had Veltri not informed the Fund that he questioned its calculation of his benefit amount until when he filed his complaint eleven years after that amount was initially computed, we would have to decide whether the Fund could rely on equitable estoppel to preclude his claim. However, we need not determine the precise contours of such a defense, as Veltri in fact informed the Fund of his concern within months of the initial determination. The Fund cannot claim to have been unfairly surprised by, nor can it claim to have been unable to

plan to account for, a dispute of which it was promptly informed.

## II. Validity of the Fund's Break–in–Service Rule

 The Fund argues that, even if Veltri's filing was timely, he fails to state a claim under ERISA because under the Fund's "break-in-service" rule,[3] he had no right to the additional benefits that he claims for his pre–1970 service. However, under *McDonald,* 320 F.3d at 159, a pension plan covered by ERISA may "not use the Plan's pre-ERISA break-in-service provision to limit [a beneficiary's] accrued benefits."

Appellants concede that *McDonald* renders its break-in-service provision unenforceable. *See* Appellant's Br. at 22 ("The Court held in *McDonald* that ERISA § 204 ... supercedes a plan's permanent break in service provision that limits the accrual of benefits arising from pre-ERISA employment."). Appellants here argue that we should overrule *McDonald,* "given conflicting holdings in other Circuit Courts of Appeal." *Id.* at 3. Appellants maintain that *McDonald*'s retroactive application of ERISA's rules governing calculation of terms of service for benefit accrual purposes imposes "unforeseeable liability," *id.* at 27, on pension funds that threatens to "create havoc," *id.* at 29.

 Regardless of the merits of appellants' argument, "one panel of this Court cannot overrule a prior decision of another panel," unless "there has been an intervening Supreme Court decision that casts doubt on our controlling precedent." *Union of Needletrades v. INS,* 336 F.3d 200, 210 (2d Cir.2003). We therefore decline to consider whether *McDonald*

should be overruled. We point out, however, that in cases where equitable tolling is not available because the required notice has been given, any extra liability to which funds may be exposed by the *McDonald* rule is limited by the statute of limitations. Moreover, funds may limit their exposure to liability for claims allowed by our application of equitable tolling by simply complying with the notice regulations-as appellants claim to do today-and perhaps by searching their records for objections to benefits determinations that were never responded to and may therefore be subject to equitable tolling, and providing the required notice now.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court granting summary judgment to appellee and ordering appellants to recalculate appellee's pension benefits.

---

**3.** Under Section 5.04(b) of the Plan, Veltri was "deemed to have incurred a break" because over three years passed during which he did not earn at least one month of work credit. Under Section 5.04(c) he therefore "los[t] all Service Credit accumulated for all periods prior to and during such break."