The **WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK, Plaintiff,**

v.

Kimbal **VISCUSO, Charles M. Birns and Beth S. Martin–Birns, Defendants.**

No. 08 Civ. 1141(CM).

United States District Court, S.D. New York.

Oct. 7, 2009.

Robert D. Meade, Bleakley Platt & Schmidt, LLP, White Plains, NY, for Plaintiff.

Alan Gordon Katz, Saretsky Katz Dranoff & Glass LLP, New York, NY, for Defendants.

MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT DISMISSING THE COUNTER–CLAIMS AND DENYING THE BIRNS DEFENDANTS' CROSS–MOTION FOR SUMMARY JUDGMENT ON THEIR COUNTERCLAIMS.

McMAHON, District Judge:

The court inherited this interpleader action from the docket of my late colleague, The Hon. William C. Conner.

In a decision dated July 30, 2008, Judge Conner granted plaintiff's motion for permission to pay the proceeds of a certain life insurance policy (No. 0700014261), insuring the life of one Jon Fieldman in the amount of $350,000, into court. Judge Conner also granted the cross-motion of defendant Kimbal Viscuso for summary judgment declaring that she was entitled to the proceeds from the policy. He directed the Clerk of the Court to pay the proceeds from the policy to Mrs. Viscuso.

The Birns Defendants (Charles Birns and Beth Martin–Birns) asserted two counterclaims in their answer. Because the parties did not move for judgment on the counterclaims or brief their merits, Judge Conner declined to rule on them.

Presently before me are cross-motions for summary judgment: by William Perm for an order dismissing the counterclaims and by the Birns Defendants for a judgment in their favor on the counterclaims.

The plaintiff's motion is granted. The Birns' Defendants' cross-motion is denied.

### Statement of Facts

All of the relevant facts are set forth in Judge Conner's decision, which is incorporated by reference into this decision. For our purposes, the critical facts are the following:

Fieldman, a resident of Maricopa County, Arizona, was the owner of the policy. Kimbal Viscuso, the wife of Fieldman's business partner, was the beneficiary. The policy was part of a buy-sell agreement relating to the Fieldman/Viscuso business.

The policy itself reserves to the owner (Fielding) the right to change the beneficiary. (Policy, page 4)

On January 31, 2005, Fieldman signed a durable power of attorney designating one Michael Birns, a resident of New York and a self-described "longtime friend" of Fielding's, as his attorney-in-fact and agent. (See Ex. D to the moving affidavit of Robert Meade, Esq. in support of the instant motion for summary judgment). The power is an Arizona power of attorney; it is governed by Arizona law. The power specifically states on the fact of the power, "There have been recent changes to Arizona Revised Statute Section 14–5506 ..... under that new statute an agent cannot receive any benefits from Principal unless those benefits are specifically identified in detail within this instrument or within a written contract. Otherwise, the agent could be subject to criminal prosecution ......"

Section 14 of the power of attorney grants Birns the right, "To manage any interest which I may have in any .....insurance contract ......... *but shall not include the authority to change the name*

*of any beneficiary in any . . . . . insurance contract."* (Emphasis added).

Section 11 of the power authorizes the holder of the power to make gifts "to my spouse, my children and descendants (if applicable) which may include my Agent. . . ." The gifting power is specifically limited to family; the Agent may make a gift to himself, but only if he is the spouse, child or descendant of the principal. The holder of the power has no authority to make gifts except pursuant to Section 11.

Section 16 of the power specifics the benefits that the holder of the power can receive. These include reasonable compensation (defined as the hourly wage or salary that the holder customarily receives in his regular employment) and reimbursement for sums expended on behalf of the principal. The Agent is granted the ability to live rent free in real estate owned by the principal and to inherit from the principal, but these are not at issue in this action. The ability to give gifts or benefits from the principal's estate to members of the Agent's family is not among the benefits available to the holder of the power.

■ Under Arizona law, a durable power of attorney must be in a writing signed by the principal. A.R.S. § 14–5501(A) ("A durable power of attorney is a *written instrument* . . . . ."). Under Arizona law, where a document is required to be in writing, the modification of a material term of that document must also be in writing. *Cf., Best v. Edwards,* 217 Ariz. 497, 500, 176 P.3d 695, 698 (Court of Appeals, 2008) (discussing contract required to be in writing under statute of frauds).

In or about October 2006, Birns submitted a change of beneficiary form, altering the beneficiary from Viscuso to his wife Beth and his son Charles, the Birns Defendants. He signed the form as "power of attorney" and submitted both the form and the power to plaintiff.

Plaintiff accepted the change of beneficiary request, despite the terms of both the policy and the power. By letter dated November 6, 2006 (Michael Birns Aff. Ex. E), it notified Fieldman that the change had been completed and that the Birns Defendants were now the primary beneficiaries under the policy (Michael Birns was named as the secondary beneficiary; I do not know whether he was named on the original policy). William Penn also accepted a premium payment in the amount of $4,886 from Birns. Birns avers that he ultimately received the November 6, 2006 letter, and that he made the next premium payment out of his own personal funds. He does not, however, aver that William Penn was told that he was making the payment out of his own funds; in any event, the power of attorney clearly authorized him to pay bills on behalf of Fieldman and to be reimbursed if he did so.

Fieldman died a few months later, on April 4, 2007. Both Viscuso and the Birns Defendants submitted claims for the policy proceeds. At that point, William Penn finally noticed its error. Plaintiff notified Birns that Viscuso was the proper beneficiary, because he lacked authority, under the durable power of attorney, to change the name of the beneficiary of the policy.

### Standard for Granting Summary Judgment

Judge Conner set forth the familiar standard for awarding summary judgment to a party; there is no need to repeat it here, since his opinion is incorporated by reference into this decision.

### The First Counterclaim Must Be Dismissed

The Birns' Defendants' first counterclaim seeks the proceeds of the disputed

policy on the ground that they were the rightful beneficiaries of that policy. Judge Conner's determination that Birns' effort to change the beneficiaries to his wife and child was void ab initio, and that Viscuso was in fact the rightful beneficiary—a decision with which this court wholeheartedly agrees—necessarily disposes of that counterclaim. Indeed, Judge Conner's order directing the deposit of the policy proceeds into court specifically provides that said deposit "shall fully discharge the liability of William Penn on life insurance policy 0700014261." (Opinion and Order at 17). Therefore, the first counterclaim is dismissed with prejudice.

### The Second Counterclaim (Equitable Estoppel) Must Also Be Dismissed

As an alternative ground for relief, the Birns Defendants assert that William Penn is equitably estopped to deny that they are beneficiaries of the policy, and so should be liable to them in damages for an amount equal to the proceeds of the policy that were paid over to Viscuso.

■ Plaintiff is entitled to judgment dismissing this counterclaim because there is no equitable basis on which its careless error can be deemed to have created an estoppel. Indeed, it would be utterly inequitable to permit defendants to receive the benefit of Birns' patently illegal action.

■ The purpose of equitable estoppel is to prevent unconscionable injury. *American Bartenders School, Inc. v. 105 Madison Company*, 59 N.Y.2d 716, 718, 463 N.Y.S.2d 424, 450 N.E.2d 230 (1983).[1] The doctrine is properly invoked "where

the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Veltri v. Building Service 32B–J Pension Fund*, 393 F.3d 318, 326 (2d Cir.2004).

■ The elements of an equitable estoppel are (1) a misrepresentation by the defendant; (2) reasonable reliance on that misrepresentation by the plaintiff, and (3) prejudice. *Id.* In addition, the party seeking the estoppel must not have known, and could not have learned, the true facts, and must have acted in good faith.

That William Penn made a misrepresentation cannot be gainsaid. While Judge Conner concluded that its error was careless, not intentional, the company did erroneously represent to Fielding that the change of beneficiary form filed by Birns was effective to change the beneficiaries to his wife and son.

Birns had no legal authority to alter the designation of a beneficiary of the insurance policy without a written modification of the durable power of attorney to change the limitation in Section 14. There is no evidence that Fielding ever executed any such modification. The Birns Defendants argue that Fielding (now deceased) orally granted Birns the right to change the beneficiary on the policy, but that evidence is incompetent and insufficient to raise a genuine issue of fact in the face of Arizona's requirement that a durable power of attorney be in writing.

It is also undisputed that Birns had no authority under the power of attorney to

---

1. Although Arizona law governs the construction of the insurance policy, there is no basis for applying Arizona law to a claim of equitable estoppel by citizens of New York against a New York corporation. The parties, implicitly recognizing this, have briefed the issue under New York law; they cite not a single

Arizona case. As "the parties' briefs assume that New York law controls this issue, and such implied consent ... is sufficient to establish choice of law," *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir.2004), the court will apply New York law to the equitable estoppel counterclaim.

make any gift in favor of his wife and child, unless they were descendants of Fielding. The record contains no evidence that they were.

Therefore, Birns' attempt to alter the beneficiaries under the policies was void, and William Penn mispresented the situation when it accepted the change of beneficiary form and notified Fielding that Mrs. Birns and her son were the new primary beneficiaries.

Of course, there is no basis in the record before me to conclude that William Penn communicated any mispresentation to the Birns Defendants themselves—that is, to Mrs. Birns and/or her son Charles. In fact, there is no basis for me to conclude that William Penn ever communicated the misrepresentation to Michael Birns. Ex. E to the Affidavit of Michael Birns, which is the November 6, 2006 notice of change of beneficiary, was addressed to "Jon Fieldman," not to Michael Birns; and was sent to Fieldman at "8270 E Wood Drive, Scottsdale, AZ 85260," not to an address in Westchester County, where Birns lives. The document does not show that a copy was sent to either Charles or Beth Birns, who are the actual counterclaim plaintiffs, and neither of them has testified to having either seen or relied on the letter. Instead both of them aver that they were told (at some unspecified time) *by Birns* that William Penn had substituted them as beneficiaries under Fieldman's policy. (Affidavits of Beth Martin–Birns and Charles Birns at ¶ 3). For all the court knows, it might have been long after November 2006—*perhaps even after Fieldman's death*—when Birns told his wife and son that they had been designated as beneficiaries under the policy. The court does not even know when Birns learned of William Perm's action; he avers that he "ultimately received" the November 6 letter (Michael Birns Aff. ¶ 10), but gives no date of receipt.

Since they cannot contend that plaintiff's letter to Fieldman was ever transmitted to them, the Birns Defendants testify that, "At no time prior to Jon Fieldman's death did William Penn give me any notice that the change of beneficiaries would not be honored." (Affidavits of Beth Martin–Birns and Charles Birns at ¶ 6). They suggest that William Penn's failure to communicate its error to them prior to Fieldman's death constituted a misrepresentation by silence.

■ But while, "Silence may in some cases be sufficient to establish a misrepresentation," *Veltri, supra,* 393 F.3d at 326, this is not one of those cases. The Birns Defendants cite no authority for the proposition that William Penn had any legal duty to advise them that they had been designated as beneficiaries under an insurance policy owned by someone else. It would appear that William Penn's duty ran only to the owner of the policy (its contra-party on the contract), not to any putative beneficiary. If William Penn lacked any duty to advise the Birns Defendants that they had been designated as beneficiaries, then it had no duty to tell them that this designation was made in error.

Next, reliance by the Birns Defendants on any statement by William Penn that was contrary to the terms of both the policy and the power of attorney was unreasonable as a matter of law.

The designation of the Birns Defendants as the new primary beneficiaries under the policy was made by Michael Birns, their husband and father. Michael Birns himself could not have reasonably relied on anything William Penn said about the change of beneficiary, because the law charges Birns with knowledge of (1) the limitations on his authority to act and (2) the law that governs how changes in his

authority had to be effected. *Busker on the Roof Limited Partnership Co. v. Warrington*, 283 A.D.2d 376, 725 N.Y.S.2d 45 (1st Dept.2001) (a person relying on a writing to establish legal rights is "conclusively presumed to have known, understood and assented to its terms."). Even if Birns never read the power of attorney (as he suggests at paragraph 9 of his affidavit), he is charged with knowledge of its contents under governing Arizona law. As a result, *he* could not assert an estoppel on the ground that he lacked knowledge. 57 N.Y.Jur.2d, Estoppel, Ratification & Waiver, § 37.

But it is the Birns Defendants, not Birns, who are asserting estoppel here. Plaintiff blithely assumes that Birns was acting as the "agent" for his wife and son when he designated them as the new beneficiaries under Fielding's policy, but there is not a scintilla of evidence in the record to suggest such a relationship. As a result, I reject plaintiffs suggestion that Mrs. Birns and Charles are charged with their husband's/father's knowledge under basic principles of agency.

■ But that is of no moment. The Birns Defendants are precluded from asserting an estoppel against William Penn because they had the ability to learn whether Birns was authorized to do what he purported to do. They could have ascertained the truth for themselves—either by asking Birns, their husband and father, about the limits of his authority (which he was charged with knowing), or by reading the power of attorney for themselves. The fact that Charles and Beth did not possess a copy of the power of attorney is no bar to this conclusion. We know that Michael had the power, because he sent a copy to William Penn. The court will not presume that Birns would have prevented his wife and son from reading a copy of the power if they had asked to see it.

Finally, the Birns Defendants suffered no legally cognizable prejudice as a result of William Perm's erroneous statement.

The Birns Defendants identify the "change of position" that they suffered as their failure to seek Fielding's "ratification" of the illegal beneficiary change prior to his death.

But, "No estoppel may arise in any case where the party claiming the estoppel had no right to change position." 57 N.Y. Jur.2d, Estoppel, Ratification & Waiver § 39. Because Birns had no authority to designate his wife and son as policy beneficiaries under the terms of the power of attorney—which the Birns Defendants could and should have known—the Birns Defendants had no right to change their position on the basis of William Penn's purported confirmation of his illegal and unauthorized act. Any "prejudice" the Birns Defendants suffered was actually self-imposed; it resulted from the Birns' collective failure to check the power of attorney and make sure that Birns was acting in accordance with its terms. If defendants (and Birns) had obtained Fielding's written permission *before* the invalid change of beneficiary form was filed, this whole situation could have been avoided.

Indeed, viewing the facts most favorably to the Birns Defendants, it was Michael Birns' negligence (in failing to read the power of attorney and keep apprised of the limits on his authority) that created the situation in which the Birns Defendants now find themselves. He initiated the chain of events that culminated in William Penn's changing the beneficiary designation when he submitted a request to change beneficiary that was beyond his power. William Penn also made a careless error, but Birns' original negligence (accepting as true his sworn statement that he was unaware of the contents of the

power of attorney) was a predicate to any subsequent negligence on the part of the insurer. It is well settled that, "An estoppel resting wholly on equity cannot be used to shift a loss from one careless person to another when the loss could not have happened without the earlier negligence ....and the later negligence of defendant at most only contributed to the result." 31 C.J.S, Estoppel & Waiver § 114. Equity will not shift to William Penn the loss that could have been avoided if only Birns had looked before he acted to try to secure a benefit for his wife and son.

Ultimately, equitable estoppel is unavailable here because it would be inequitable to allow the Birns Defendants seek to obtain the benefit of a transaction that was void *ab initio.*, "Where under the law there is an entire lack of power to do the act in question, it cannot be made good by estoppel." The *Mutual Life Insurance Company of New York v. Corey,* 135 N.Y. 326, 334, 31 N.E. 1095 (1892).[2] Under the law of the State of Arizona, Michael Birns lacked the power to change the beneficiary of the Fielding insurance policy. Equity will not step in to give the Birns Defendants a benefit they could only have become entitled to if Birns did have the power to make the change.

 "The doctrine of equitable estoppel is not usable to gain a positive advantage over the person estopped, but is limited in its effects to measures necessary to place the parties in the same relative positions they would have enjoyed if the grounds for estoppel had not existed." *New York State Energy Research & Development*

*Authority v. Nuclear Fuel Services, Inc.,* 561 F.Supp. 954, 965 (W.D.N.Y.1983). Here, if the asserted "grounds for estoppel"—William Penn's representation that it had changed the beneficiary on the Fieldman policy—never existed, the Birns Defendants would not have been the actual beneficiaries under the policy. So there is no basis for the Birns Defendants to work an estoppel against William Penn.

The plaintiff's motion for summary judgment dismissing the counterclaims is granted. The Birns' Defendants' cross-motion for summary judgment on the counterclaims is denied.

The clerk is directed to enter judgment dismissing the counterclaims, and to close the file in this matter. Any motions not yet decided shall be marked off this court's calendar as moot.

---

2. William Penn argues that Birns' action was criminal, citing A.R.S. § 14–5506(A), which provides that an agent who uses his principal's money, property or other assets for the agent's benefit, rather than in the principal's best interest, commits a crime. While there appears to be some force to this argument, it is not necessary to conclude that Birns actually committed a crime—which would require a determination about whether Birns himself received a benefit from designating his wife and son as policy beneficiaries, as well as possible issues of mens rea—in order to reject his family's reliance on the doctrine of equitable estoppel.