13-2844
*Gonzalez v. Hasty*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2014

(Argued:  May 28, 2015                    Decided:  September 3, 2015)

Docket No. 13-2844

Esteban Gonzalez,
Plaintiff–Appellant,

v.

Dennis W. Hasty, James Sherman, Salvatore LoPresti, Ortiz, Inspector Barrere, C.O. White, #8413, Defendants–Appellees.[*]

Before:        SACK, LYNCH, and CHIN, *Circuit Judges*.

The plaintiff, Esteban Gonzalez, appeals from a July 22, 2013, judgment of the United States District Court for the Eastern District of New York (Brian M. Cogan, *Judge*) dismissing his First, Fifth, and Eighth Amendment claims brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), on the ground that he failed to institute his action within the time limit set by the applicable three-year statute of limitations.  His claims arose in connection with his confinement in the Special Housing Unit of the Metropolitan

[*] The Clerk of Court is directed to amend the official caption to conform to the caption above.

Correctional Center in Manhattan, and then the Special Housing Unit of the Metropolitan Detention Center in Brooklyn, for an extended period of time, allegedly without procedural protections, and in retaliation for protected speech. We conclude that the district court correctly applied the three-year statute of limitations to Gonzalez's First Amendment claim, but that it erred in holding that his Fifth and Eighth Amendment claims are time-barred in their entirety.

We therefore AFFIRM in part, and VACATE and REMAND to the district court in part for further proceedings.

> AMEER BENNO, Benno & Associates, P.C., New York, NY, (Michael A. Young, New York, NY, *on the brief*), *for Plaintiff–Appellant.*
>
> RACHEL BALABAN, Assistant United States Attorney (Varuni Nelson, Assistant United States Attorney, *on the brief*), *for* Kelly T. Currie, Acting United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Defendants–Appellees* Dennis W. Hasty, James Sherman, Ortiz, Inspector Barrere, C.O. White, # 8413.

SACK, *Circuit Judge*:

This is an appeal from a July 22, 2013, judgment of the United States District Court for the Eastern District of New York (Brian M. Cogan, *Judge*),

granting the defendants' motion to dismiss[1] plaintiff Esteban Gonzalez's First, Fifth, and Eighth Amendment claims, brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), relating to his confinement in the Special Housing Units in two federal prison facilities, both located within the City of New York.  The district court concluded that the plaintiff failed to file his complaint within the three-year statute of limitations applicable to *Bivens* claims.  The result was premised principally on a determination that the continuing violation doctrine did not apply to any of Gonzalez's claims.  We conclude that the continuing violation doctrine does apply to Gonzalez's Eighth Amendment claim, but that it does not apply to his First or Fifth Amendment claims.  Certain aspects of his Fifth Amendment claim may nevertheless be timely.

---

[1] The defendants filed a motion to dismiss or, in the alternative, for summary judgment.  The district court's decision states at the outset that "[t]he case is before [it] on defendants' motion for summary judgment," *Gonzalez v. Hasty*, 12-cv-5013, 2013 WL 3816587, at *1, 2013 U.S. Dist. LEXIS 102215, at *1 (E.D.N.Y. July 22, 2013), but concludes by granting the "[d]efendants' motion to dismiss," *id.*, 2013 WL 3816587, at *5, 2013 U.S. Dist. LEXIS 102215, at *13.  Despite the district court's reference to summary judgment, we read its decision as a grant of a motion to dismiss under Rule 12(b)(6).  *See, e.g.*, *Gonzalez v. Hasty*, Judgment, 12-cv-5013 Dkt. No. 122 (July 22, 2013) (Supp. App'x 285) ("ORDERED and ADJUDGED that Defendants' motion to dismiss is granted; and that judgment is hereby entered in favor of Defendants, dismissing the Amended Complaint."); *see also Gonzalez v. Hasty*, Minute Entry, 12-cv-5013 (Mar. 11, 2013) (Pl.'s App'x 30) (ordering defendants to "limit their reply to plaintiff's opposition to defendants' motion to dismiss, not to plaintiff's 56.1 response or those portions of his response that address summary judgment").

# BACKGROUND

*Facts*

On February 28, 1999, Gonzalez stabbed a fellow inmate at the Metropolitan Correctional Center in Manhattan (the "MCC"), with a "knife-like" object.[2] Gonzalez was placed under administrative detention in the Special Housing Unit (the "SHU") later that day, and remained confined therein for more than two years, until July 24, 2001.

On July 24, 2001, Gonzalez was transferred from the MCC to the Metropolitan Detention Center (the "MDC")[3] in Brooklyn, New York. When he arrived, he was immediately placed in the MDC SHU. He remained there for more than nine additional months, until on or about May 11, 2002.[4] Gonzalez alleges that the MCC warden, defendant Dennis Hasty, ordered Gonzalez's transfer to the MDC prior to his reassignment to the post of MDC warden so that Hasty could continue to supervise Gonzalez. An MCC corrections officer told

---

[2] Because we are reviewing the grant of a motion to dismiss, for the purposes of this appeal, we accept as true the factual allegations in Gonzalez's complaint. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

[3] Although we thus provide definitions for the MCC in Manhattan and the MDC in Brooklyn, because of the similarities of the initials, names, and functions of the institutions, in an effort to assist the reader, we will from time to time refer to them as "MCC (Manhattan)" and "MDC (Brooklyn)."

[4] The government claims that Gonzalez was released on April 15, 2002. At this stage of the proceedings, however, we accept the date pled in the complaint.

Gonzalez, "[y]ou're going to MDC to be with your friend Warden Hasty."

Compl. ¶ 41 (Pl.'s App'x 72). Defendant Salvatore LoPresti, captain of security at the MDC (Brooklyn), "accepted that transfer with the knowledge that it was being made to enable [Hasty] to continue to exercise control over and abuse Plaintiff Gonzalez." *Id.*

Hasty made it known that "he had a personal vendetta against [] Gonzalez, [and] that [Hasty] would not release [] Gonzalez from [the] SHU under any circumstances . . . ." Compl. ¶ 29 (Pl.'s App'x 68). Gonzalez contends that this vendetta was motivated by racial animus, as evidenced by the fact that the Federal Bureau of Prisons ("BOP") previously had ordered Hasty to remove a Confederate flag from his office.

While in the SHU, Gonzalez was not afforded all of the procedural protections to which he asserts he was entitled under 28 C.F.R. § 541.22(c)(1).[5] This rule required that within three work days of an inmate's confinement in the SHU, a Segregation Review Officer ("SRO") review the administrative detention. The SRO was further required to review the case outside of the inmate's presence for every week of confinement, and hold a formal hearing and review with the

---

[5] The relevant code provision, which addresses prisoner detention in special housing units, was amended in 2011. All references here, however, are to the version in effect at the time of Gonzalez's detention.

inmate present every 30 days. 28 C.F.R. § 541.22(c)(1). The BOP was also required to conduct a psychological assessment every 30 days to determine, *inter alia*, whether the inmate posed an ongoing threat to himself or others. *Id.*

Instead of complying with these regulations, the defendants falsified forms to make it appear as though they were in compliance, "held unauthorized weekly meetings to determine which inmates were to be released from [the] SHU and returned to general population," Compl. ¶ 27 (Pl.'s App'x 68), and ignored psychological assessments suggesting that Gonzalez "was not in need of further SHU confinement," Compl. ¶ 38 (Pl.'s App'x 71). In sum, Gonzalez alleges that the defendants "agreed, confederated and conspired with Defendant Hasty throughout the period of [] Gonzalez's confinement in [the] SHU to keep [] Gonzalez unlawfully confined to [the] SHU under harsh conditions . . . ." Compl. ¶ 30 (Pl.'s App'x 69) (capitalization altered).

While at the MCC (Manhattan) SHU, Gonzalez filed at least twenty-nine administrative complaints. Six of them, the first of which was filed on May 2, 2000, related to his SHU confinement. He exhausted his MCC SHU-related administrative remedies on November 15, 2000, when the BOP denied his last appeal.

6

While confined in the MDC (Brooklyn) SHU, Gonzalez filed at least forty-two administrative complaints, three of which related to his MDC SHU confinement.  He filed his first MDC SHU-related request on February 14, 2002.  The BOP denied this request on July 2, 2002.  He administratively exhausted all of his MDC SHU-related remedies on August 8, 2002, when the BOP denied his last request.

As noted, Gonzalez was released from the MDC SHU on May 11, 2002, which was shortly after Hasty retired.  The district court accordingly concluded that the statute of limitations should be tolled for as few as 116 or as many as 174 days, representing the period during which Gonzalez was exhausting his administrative remedies.[6]  *Gonzalez v. Hasty*, No. 12-cv-5013, 2013 WL 3816587, at *4, 2013 U.S. Dist. LEXIS 102215, at *12-13 (E.D.N.Y. July 22, 2013).

---

[6] The district court did not explain how it arrived at these numbers.  The defendants' brief suggests that "[t]he 174-day period calculated by the court represents the period from when Gonzalez submitted his first MDC-SHU administrative remedy request (February 14, 2002) until the last denial of a final appeal in any of his three administrative remedy requests (August 8, 2002 denial of February 22, 2002 request)."  The 116-day period "appears to be the period from when Gonzalez submitted his last MDC-SHU administrative remedy request (February 24, 2002) until the denial of his final appeal of that specific request (June 20, 2002)."  Def.s' Br. at 24 n.9.  We note also that the defendants calculated that the upper limit of the tolling period is 175 days, not 174.

7

Gonzalez commenced this *Bivens* action on May 31, 2005, in the United States District Court for the Southern District of New York, alleging that his confinement in the MCC and MDC SHUs violated his First, Fifth, and Eighth Amendment rights. As a result, his suit was timely under the applicable three-year statute of limitations insofar as it relates to claims dating back to on or about February 4, 2002 (assuming a 116-day tolling period) or December 8, 2001 (assuming a 174-day tolling period). Because the parties do not discuss which, if either, of these dates represents the correct tolling period, and such a determination is not necessary to the analysis that follows, we leave it to the district court on remand to determine the date by which any timely claims must have accrued. We hereinafter refer to that date as the "cutoff date."

A summary of key dates is as follows:

| | |
|---|---|
| February 28, 1999 | Gonzalez was placed in the MCC (Manhattan) SHU |
| May 2, 2000 | Gonzalez lodged his first administrative complaint alleging that his MCC SHU detention was improper |
| November 15, 2000 | All of Gonzalez's MCC SHU-related administrative complaints were exhausted |
| July 24, 2001 | Gonzalez was transferred from the MCC SHU to the MDC (Brooklyn) SHU |
| February 14, 2002 | Gonzalez made his first MDC SHU-related request for administrative remedy |
| May 11, 2002 | Gonzalez was released from the MDC SHU |

| July 2, 2002 | The BOP denied Gonzalez's first MDC SHU-related administrative complaint |
| August 8, 2002 | All of Gonzalez's MDC SHU-related administrative requests were exhausted |
| May 31, 2005 | Gonzalez commenced a *Bivens* action in the Southern District of New York |

*Procedural History*

On May 31, 2005, Gonzalez brought suit against Hasty, in his capacity as warden of both the MCC (Manhattan) and MDC (Brooklyn), and various other personnel from both facilities, in the United States District Court for the Southern District of New York.  On March 27, 2007, the district court (Richard M. Berman, *Judge*) dismissed Gonzalez's MCC claims as time-barred.  *Gonzalez v. Hasty*, No. 05-cv-6076, 2007 WL 914238, at *3, 2007 U.S. Dist. LEXIS 21668, at *8-9 (S.D.N.Y. Mar. 27, 2007), *vacated*, 651 F.3d 318 (2d Cir. 2011).  It concluded that the applicable three-year statute of limitations had run because Gonzalez's claims ripened when he was transferred out of the MCC, on July 24, 2001.  *Id.*  The district court dismissed Gonzalez's MDC claims for improper venue, explaining that none of the events underlying those claims had occurred in the Southern District.[7]  *Id.*, 2007 WL 914238, at *3, 2007 U.S. Dist. LEXIS 21668, at *11.

---

[7] The MCC is located in the Southern District of New York; the MDC is located in the Eastern District of New York.

Gonzalez appealed. We decided that the district court erred in failing to apply tolling to the statute of limitations during the time in which Gonzalez was exhausting his administrative remedies. *Gonzalez v. Hasty*, 651 F.3d 318, 323-24 (2d Cir. 2011). Because it was not clear from the record when Gonzalez first initiated his administrative claim, thereby commencing the tolling period, we vacated the dismissal and remanded the case to the district court. *Id.* at 324. We also directed the district court to transfer Gonzalez's MDC claims to the Eastern District of New York if it once again determined that venue did not lie in the Southern District. *Id.* at 325. We expressly "decline[d] to decide on th[e] record [before us] whether the continuing violation doctrine allows the two confinements to be aggregated in order to preserve MCC claims that might otherwise have been lost absent prolonged tolling, and to lengthen the period of confinement in [the] SHU." *Id.* at 320 n.1.

On remand, the district court granted the defendants' motion for partial summary judgment, concluding that Gonzalez's claims against all of the MCC defendants except for Hasty were time-barred.[8] *Gonzalez v. Hasty*, 05-cv-6076, 2012 WL 4473689, at *7-9, 2012 U.S. Dist. LEXIS 141251, at *22-27 (S.D.N.Y. Sept. 28, 2012). The court rejected Gonzalez's argument that the continuing violation

_____

[8] Gonzalez does not appeal this decision.

doctrine, described at some length in the Discussion section of this opinion below, applied to delay the start of the limitations period as to the MCC claims, reasoning that the Second Circuit has never applied the doctrine to a *Bivens* action, and even if the doctrine did apply to *Bivens* claims, Gonzalez failed to allege that the MCC defendants committed any wrongful acts within the limitations period. *Id.*, 2012 WL 4473689, at *8, 2012 U.S. Dist. LEXIS 141251, at *24-26. Because the parties acknowledged that at least some of Gonzalez's claims against Hasty and the MDC defendants might be timely, the court transferred the case to the Eastern District pursuant to the Second Circuit's instruction.[9] *Id.*, 2012 WL 4473689, at *10, 2012 U.S. Dist. LEXIS 141251, at *32.

After the case was transferred, the remaining defendants moved to dismiss or, in the alternative, for summary judgment. *Gonzalez v. Hasty*, Motion, 12-cv-5013, Dkt. No. 106 (Feb. 13, 2013). Gonzalez argued that the continuing violation doctrine should apply to his *Bivens* claims to delay the start of the limitations period until the date of his release from the MDC SHU. Doing so, he argued, would render his claims timely after taking into account administrative tolling. The district court rejected this argument and granted the defendants' motion to

---

[9] The district court stated that it did not need to decide "whether the continuing violation doctrine applie[d] to Warden Hasty," since he remained a defendant in the case. *Id.*, 2012 WL 4473689, at *9, U.S. Dist. LEXIS 141251, at *27.

11

dismiss, concluding that even if the continuing violation doctrine could apply in some *Bivens* actions, it would not apply in this case. *Gonzalez*, 2013 WL 3816587, at *3, 2013 U.S. Dist. LEXIS 102215, at *7.

The district court observed that a claim typically accrues when a plaintiff has full knowledge of the material facts that give rise to it. *Id.*, 2013 WL 3816587, at *2, 2013 U.S. Dist. LEXIS 102215, at *6. The court further reasoned that Gonzalez had complained that his lengthy SHU confinement at the MCC (Manhattan) was improper, and if that were so, he was thereby demonstrating knowledge that his placement in the MDC (Brooklyn) SHU similarly was improper. *Id.*, 2013 WL 3816587, at *3, 2013 U.S. Dist. LEXIS 102215, at *7. But Gonzalez did not commence the MDC action until May 31, 2005, which was more than three years after he entered the MDC SHU, taking into account administrative tolling. *Id.*, 2013 WL 3816587, at *4, 2013 U.S. Dist. LEXIS 102215, at *12-13. The court also failed to rule on Gonzalez's request for discovery.

Gonzalez appeals from the district court's dismissal, arguing that the continuing violation doctrine applies to his claims against Hasty, which relate to his confinement at both the MCC and MDC, and his claims against the other MDC defendants: James Sherman, Salvatore LoPresti, "Ortiz," Inspector Barrere,

and "C.O. White, #8413," which involve only his incarceration in the MDC. He also appeals from the district court's implicit denial of his discovery request and requests reassignment of his case to another judge on remand.

## DISCUSSION

### I.  Standard of Review

We review the district court's grant of the defendants' motion to dismiss under Rule 12(b)(6) *de novo*, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the non-moving party. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

### II.  Statute of Limitations

*A.    The Nature and Scope of the Continuing Violation Doctrine*

The statute of limitations for *Bivens* claims is governed by the statute of limitations applicable to New York state law "personal injury claims not sounding in intentional tort." *Chin v. Bowen*, 833 F.2d 21, 23-24 (2d Cir. 1987). New York Civil Practice Law and Rules section 214(5) provides a three-year statute of limitations for such claims. Federal law, however, governs the determination of when the statute of limitations begins to run. *Kronisch v. United States*, 150 F.3d 112, 123 (2d Cir. 1998). A *Bivens* claim accrues under federal law

for statute of limitations purposes when a plaintiff either has knowledge of his or her claim or has enough information that a reasonable person would investigate and discover the existence of a claim. *See id.* at 123-24.

The continuing violation doctrine, where applicable, provides an "exception to the normal knew-or-should-have-known accrual date." *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999). It applies to claims "composed of a series of separate acts that collectively constitute one unlawful [] practice." *Washington v. Cty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002)). The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of a "serial violation[]," but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment. *Morgan*, 536 U.S. at 114-15.

Accordingly, where the continuing violation doctrine applies, the limitations period begins to run when the defendant has "engaged in enough activity to make out an actionable . . . claim." *Id.* at 117. A claim will be timely, however, only if the plaintiff "allege[s] . . . some non-time-barred acts" contributing to the alleged violation. *Harris*, 186 F.3d at 250.

The continuing violation doctrine typically arises in the context of a complaint of unlawful workplace discrimination challenged under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* "[U]nder the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an [Equal Employment Opportunity Commission] charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155-56 (2d Cir. 2012) (internal quotation marks omitted).

To prevail, a plaintiff alleging a hostile work environment claim under Title VII, for example, must show that under the totality of the circumstances, the alleged conduct was so "severe or pervasive as to create an objectively hostile or abusive work environment." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004) (internal quotation marks omitted). The alleged conduct in many hostile work environment cases must be repeated or ongoing before it is adequately severe or pervasive to constitute a violation. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("As a general rule, incidents must be more than episodic; they

must be sufficiently continuous and concerted in order to be deemed pervasive." (internal quotation marks omitted)).

While the doctrine's use is most often encountered in connection with actions asserting Title VII violations, its application is by no means limited to that context. We have, for example, applied it to an Eighth Amendment claim of deliberate indifference to serious medical needs brought under 42 U.S.C. § 1983 where the "prisoner challenge[d] a series of acts that together comprise[d]" his claim. *Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009). We have also applied it to an unlawful takings claim under section 1983. *Sherman v. Town of Chester*, 752 F.3d 554, 566-67 (2d Cir. 2014). Other circuits also have invoked the doctrine more broadly. *See, e.g.*, *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013) (applying the continuing violation doctrine to an Eighth Amendment claim concerning "the cumulative impact of numerous imposed lockdowns" on the plaintiff).

We see no reason why the doctrine thus applied from time to time to Eighth Amendment claims against state actors brought under section 1983 would not in a proper case be applicable to an Eighth Amendment claim against federal officials brought under *Bivens*. *Cf. Chin v. Bowen*, 833 F.2d at 24 ("Both *Bivens* and

section 1983 actions are designed to provide redress for constitutional violations. Though the two actions are not precisely parallel, there is a general trend in the appellate courts to incorporate § 1983 law into *Bivens* suits." (internal quotation marks and footnote omitted)).  The controlling feature of the doctrine is not the source of the right of action, but rather the characteristics of the claim.

In an attempt to rebut the plaintiff's position that the continuing violation doctrine can apply in a *Bivens* action, the defendants rely on our decision in *Mix v. Delaware & Hudson Railway Co.*, 345 F.3d 82 (2d Cir. 2003).  There we concluded that the continuing violation doctrine did not apply to a claim for injury under the Federal Employers' Liability Act ("FELA"). *Id.* at 89.  The plaintiff had argued that *Morgan* supported the continuing violation doctrine's application to his claim for hearing loss, which he sustained gradually during his employment at various railway yards. *Id.* at 84-85, 89.  We rejected that argument, drawing a distinction between Title VII's "occurrence-based trigger for the statute of limitations," by which the statute of limitations begins to run when the "unlawful employment practice has occurred," and FELA's "discovery-based trigger," by which the statute of limitations begins to run when the plaintiff discovers or has

enough information from which he or she should have discovered the injury and its cause. *Id.* at 89 (internal quotation marks omitted).

*Bivens* and section 1983 claims, like those under FELA, typically are subject to a "discovery-based trigger." But we do not read *Mix* as recognizing a categorical bar to the continuing violation doctrine's application to claims that otherwise would be subject to the discovery rule. Doing so would cast serious doubt on our decision to apply the continuing violation doctrine to a claim otherwise subject to the discovery rule, as we did in *Shomo*, and would render our prior characterization of the continuing violation doctrine as an "exception" to the discovery rule senseless. *See Harris*, 186 F.3d at 248. We therefore do not read *Mix* as a barrier to the application of the doctrine to Gonzalez's constitutional claims.

B.     *The Continuing Violation Doctrine's Application to Gonzalez's Claims*

The defendants argue that the district court was correct to conclude that Gonzalez's MDC-related claims accrued on July 24, 2001, when he was transferred from the MCC (Manhattan) SHU to the MDC (Brooklyn) SHU, because he "knew of his alleged injury" on that date." Def.s' Br. 30. They also contend that even if the continuing violation doctrine can apply to some *Bivens*

actions, it does not apply to this one, at least in part because Gonzalez complains of discrete acts. The defendants argue in the alternative that we should affirm because Gonzalez has not exhausted his administrative remedies with respect to any claims he may have for acts taken after the cutoff date and because Gonzalez purportedly has failed to adequately allege that his claims are timely as to each individual defendant. *See Eagleston v. Guido*, 41 F.3d 865, 872 (2d Cir. 1994) (A court must "consider[] specifically as to each defendant at what point [the plaintiff] ha[s] a compensable claim . . . .").

We agree that the continuing violation doctrine does not apply to Gonzalez's First and Fifth Amendment claims, which are based on discrete acts by the defendants, each of which would start the running of the statute of limitations for that act. Some of those discrete acts, however, appear to have occurred after the cutoff date and therefore may provide a basis for a timely claim even absent application of the doctrine, although damages would only be available for acts within the limitations period. Moreover, for the reasons that follow, we conclude that the continuing violation doctrine may apply to Gonzalez's Eighth Amendment claim. We leave it to the district court to evaluate in the first instance the defendants' alternative arguments for dismissal, premised

19

on exhaustion and the timeliness of Gonzalez's claims as to each individual defendant.

*1. First Amendment Retaliation*

The continuing violation doctrine does not apply to Gonzalez's First Amendment claim. [10] In order to state a claim for retaliation in violation of the First Amendment, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Garcia v. SUNY Health Scis. Ctr.*, 280 F.3d 98, 106-07 (2d Cir. 2001) (internal quotation marks omitted). Gonzalez's claim, as it is pled, is premised on the discrete act of placing him in the SHU for 1163 days "in retaliation for statements which he had made concerning [] Hasty." Compl. ¶ 56 (Pl. App'x 75).

Hasty's decision to confine Gonzalez to the MCC (Manhattan) SHU was a discrete act that occurred on or about February 28, 1999. His decision to confine Gonzalez to the MDC (Brooklyn) SHU similarly was a discrete act that occurred on or about July 24, 2001. Any claim that Gonzalez may have had for those acts accrued on the dates on which they occurred, both of which were more than

---

[10] We assume without deciding that a First Amendment claim is cognizable under *Bivens*. *Cf. Zherka v. Ryan*, 52 F. Supp. 3d 571, 579 (S.D.N.Y. 2014) ("[T]he Second Circuit has not recognized a *Bivens* action sounding in the First Amendment.").

three years before the cutoff date. As this Court previously has explained in a non-precedential summary order, "[t]he mere fact that the effects of retaliation are continuing does not make the retaliatory act itself a continuing one." *Deters v. City of Poughkeepsie*, 150 F. App'x 10, 12 (2d Cir. 2005) (summary order).

Gonzalez might have had a timely First Amendment claim against Hasty and the other defendants to the extent that they made periodic retaliatory decisions to maintain Gonzalez in the SHU after the cutoff date.[11] But he does not allege that Hasty or any of the other defendants' periodic decisions not to release him from the SHU were motivated by such retaliation. *See, e.g.*, Compl. ¶ 56 (Pl. App'x 75) (alleging that his "confinement in [the] SHU . . . for 1163 days in retaliation for statements which he had made concerning Defendant HASTY violated his rights to free speech under the First Amendment").

We therefore conclude that Gonzalez's First Amendment claim is untimely.

*2. Fifth Amendment Due Process*

Gonzalez alleges that the defendants deprived him of due process in violation of the Fifth Amendment by failing to provide him with "required

---

[11] The district court might consider allowing Gonzalez to replead this claim, should he request leave to do so, in light of our opinion clarifying the law in this area.

notices, hearings and other procedural protections and [] required disclosure of documentary evidence" while he was confined in the SHU. Compl. ¶ 54 (Pl.'s App'x 75). The continuing violation doctrine does not apply to this claim.

In determining whether an inmate's confinement effects a violation of procedural due process, we consider "whether the plaintiff had a protected liberty interest in not being confined . . . and, if so, [] whether the deprivation of that liberty interest occurred without due process of law." *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000) (internal quotation marks omitted; ellipsis in original). "A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life . . . ." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (internal quotation marks omitted). Determining whether the hardship imposed is "atypical and significant" requires consideration of "[b]oth the conditions and their duration." *Id.* (internal quotation marks omitted). A period of confinement under typical SHU conditions lasting longer than 305 days, for example, triggers a protected liberty interest, whereas a period of confinement lasting between 101 and 305

days may trigger a protected liberty interest, depending on the specific conditions of confinement. *Id.* at 64-65.

Failure to provide an inmate with the procedural protections afforded under 28 C.F.R. § 541.22 after a protected liberty interest attaches may constitute a violation of the inmate's right to procedural due process. *See Tellier*, 280 F.3d at 79-83; *cf. Palmer*, 364 F.3d at 64 ("[The inmate] had no right to due process at his hearing unless a liberty interest was infringed as a result." (alterations, emphasis, and internal quotation marks omitted)). As a result, a discrete claim may accrue under the Fifth Amendment each time that a defendant fails to provide an inmate with the notice, hearing, or evaluation to which he is entitled after a liberty interest attaches. These denials or failures are discrete acts, which may combine to form a "serial violation." But *Morgan* forecloses the continuing violation doctrine's application to claims of this nature. *Morgan*, 536 U.S. at 114-15.

Gonzalez may have a timely claim, however, for a violation of his right to procedural due process notwithstanding the inapplicability of the continuing violation doctrine. He alleges, *inter alia*, that the defendants failed to hold required weekly and monthly reviews to assess the need for his continued SHU

23

confinement. *See* Compl. ¶ 24 (Pl.'s App'x 67). At least some of those regular meetings and hearings should have occurred during the final months of Gonzalez's confinement, some portion of which was after the cutoff date. The district court's view that Gonzalez's claims alleging discrete acts are untimely because he knew or should have known that he had a claim premised on his SHU confinement seems to us mistaken in light of the nature of the claims. Where, as here, a plaintiff complains of a discrete act or series of discrete acts, each of which violates the law, the plaintiff has a separate claim for each act, and each act carries its own limitations period. *Cf. Morgan*, 536 U.S. at 113 ("Each discrete discriminatory act starts a new clock for filing charges alleging that act.").

We leave it to the district court to determine in the first instance at what point, if any, a protected liberty interest attached under the facts of this case, and what portion, if any, of Gonzalez's Fifth Amendment claims accrued after the cutoff date.

*3. Eighth Amendment Cruel and Unusual Punishment*

Finally, Gonzalez claims that the length and conditions of his confinement in the SHU "violated his rights under the Eighth Amendment's prohibition

24

against cruel and unusual punishment."  Compl. ¶ 55 (Pl. App'x 75).  This claim *is* subject to the continuing violation doctrine.

"Confinement in a prison or in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards."  *Hutto v. Finney*, 437 U.S. 678, 685 (1978).  In order to establish an Eighth Amendment violation, an inmate must show "(1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) a sufficiently culpable state of mind on the part of the defendant official . . . ." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (internal quotation marks omitted).  Although "[i]t is perfectly obvious that every decision to remove a particular inmate from the general prison population for an indeterminate period could not be characterized as cruel and unusual[,] . . . [i]t is equally plain [] that the length of confinement cannot be ignored in deciding whether the [overall conditions of] confinement meet[] constitutional standards." *Hutto*, 437 U.S. at 686.  In other words, whether incarceration in the SHU violates the Eighth Amendment, like the liberty interest inquiry discussed above, depends on the duration and conditions of the confinement.

An Eighth Amendment claim predicated on SHU confinement therefore typically accrues only after an inmate has been confined in the SHU for a prolonged period of time. This is properly analogous to the Eighth Amendment deliberate indifference claim in *Shomo*, in which the plaintiff "challenge[d] a series of acts that together comprise[d]" his Eighth Amendment claim, 579 F.3d at 182, and *Morgan*, in which the hostile work environment claim accrued only after the plaintiff had been subjected to some threshold amount of workplace abuse, 536 U.S. at 114-15. It follows that the continuing violation doctrine should be applied to an Eighth Amendment claim of this nature.

Gonzalez's claim as he has pled it, assuming it otherwise is viable, accrued only after the defendants had confined him in the SHU for some threshold period of time. This renders the continuing violation doctrine applicable. At what point Gonzalez's claim accrued, though, is a question of fact determinable only by a close assessment of the conditions to which Gonzalez was subjected as a function of the length of that confinement. But, assuming his claim accrued some months or years before the cutoff date, *Morgan* stands for the proposition

that his entire Eighth Amendment claim will be timely as long as the violation of rights continued past the cutoff date. *Morgan*, 536 U.S. at 117.[12]

### III. Discovery

The district court did not rule on or otherwise address Gonzalez's discovery request for "[a]ll documents, requests, communications, approvals and orders pertaining to plaintiff Gonzalez's transfer from [the] MCC to [the] MDC on or about July 24, 2001 and the names and titles of all staff who were in any way involved with said documents." Pl.'s App'x 58-59. Gonzalez appeals from the court's implicit denial of his request. Taking into account Gonzalez's failure to move to compel discovery under Federal Rule of Civil Procedure 56(d), the district court's failure to explicitly respond to his letter request that the court direct discovery, and the fact that we now remand in part, we decline to decide whether the district court's implicit denial was proper. Gonzalez may renew any discovery requests to the district court on remand.

### IV. Reassignment on Remand

Gonzalez contends that the case should be reassigned to a different judge on remand because the district court displayed "prejudice[]" and "animosity"

---

[12] The district court should, in the first instance, determine whether the continuing violation doctrine's application renders Gonzalez's MCC SHU-related Eighth Amendment claim against Hasty timely.

27

towards him. Pl.'s Br. 45, 48. He further contends that the district court improperly coached the defendants' attorneys with respect to the timing of their motions to dismiss and for summary judgment to facilitate their avoidance of discovery. We reject the request.

Reassignment is granted only in "unusual circumstances." *United States v. Robin*, 553 F.2d 8, 9-10 (2d Cir. 1977) (en banc) (per curiam); *see also United States v. City of New York*, 717 F.3d 72, 99 (2d Cir. 2013) ("[Reassignment] is an extreme remedy, rarely imposed . . . ."). We consider three factors in determining whether reassignment is warranted:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Martens v. Thomann*, 273 F.3d 159, 174 (2d Cir. 2001) (quoting *Mackler Prods., Inc. v. Cohen*, 225 F.3d 136, 146-47 (2d Cir. 2000)).

We find nothing in the record that would serve as a basis for a conclusion that the district judge would have difficulty putting aside any of his previous views of the case that are contrary to those of this Court expressed or implied in

this opinion, or that reassignment is necessary to preserve "the appearance of justice."[13] *Id.*

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED in part and VACATED and REMANDED in part for further proceedings in the district court.

---

[13] To the extent that the district court suggested that the defendants proceed on a motion to dismiss before engaging in discovery and moving for summary judgment, this appears to us, under the circumstances of this case, to be nothing more than reasonable case management.