17-3790-cv
Gonzalez v. Hasty, et al.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of November, two thousand eighteen.

Present:
> DEBRA ANN LIVINGSTON,
> DENNY CHIN,
> *Circuit Judges,*
> PAUL A. CROTTY,
> *District Judge.*[*]

---

ESTEBAN GONZALEZ,

> *Plaintiff-Appellant*,

v.                                                            17-3790-cv

DENNIS W. HASTY, JAMES SHERMAN, SALVATORE LOPRESTI, ORTIZ, INSPECTOR BARRERE, C.O. WHITE, #8413,

> *Defendants-Appellees.*[†]

---

| | |
|---|---|
| For Plaintiff-Appellant: | STEIG OLSON (Cleland B. Welton II, Andrew P. Marks, *on the brief*), Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY. |
| For Defendants-Appellees: | MICHAEL SHIH (Chad A. Readler, Richard P. Donoghue, Rachel G. Balaban, H. Thomas Byron |

---

[*] Judge Paul A. Crotty, of the United States District Court for the Southern District of New York, sitting by designation.
[†] The Clerk of Court is respectfully instructed to amend the caption as set forth above.

III, *on the brief*), Civil Division, United States Department of Justice, Washington, D.C.

Appeal from an order of the United States District Court for the Eastern District of New York (Cogan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

Plaintiff Esteban Gonzalez ("Gonzalez") was convicted in 1994 of being a felon in possession of a firearm in violation of federal law. In February 1999, while awaiting resentencing on that charge at the Metropolitan Correctional Center ("MCC") in Manhattan, Gonzalez assaulted another inmate, for which he was also convicted. Immediately after the 1999 assault, MCC officials placed Gonzalez in solitary confinement in MCC's Special Housing Unit ("SHU"). In July 2001, Gonzalez was transferred to the Metropolitan Detention Center ("MDC") in Brooklyn, where he remained in the MDC SHU. Gonzalez was released into the general population at MDC in April 2002.

On May 31, 2005, Gonzalez sued several Bureau of Prisons ("BOP") officials—including former Warden Dennis W. Hasty ("Hasty"), Associate Warden James Sherman ("Sherman"), Captain Salvatore LoPresti ("LoPresti"), and Lieutenants Steven Barrere ("Barrere"), Daniel Ortiz ("Ortiz"), and Douglas White ("White") (collectively, "Defendants")—for money damages in their individual capacities pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Gonzalez alleged violations of the Due Process Clause of the Fifth Amendment and the Cruel and Unusual Punishments Clause of the Eighth Amendment. The United States District Court for the Eastern District of New York (Cogan, *J.*) granted summary judgment to Defendants on all of Gonzalez's claims, ruling that *Ziglar v. Abbasi*, 137 S. Ct. 1843

(2017), precluded such claims as a matter of law.  Gonzalez appeals.  We assume the parties'
familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\*　　　\*　　　\*

*Bivens* recognized an implied cause of action for damages under the Fourth Amendment to
compensate persons injured by federal officials' violations of that Amendment's prohibition
against unreasonable searches and seizures.  403 U.S. at 397.  In *Carlson v. Green*, 446 U.S. 14
(1980), the Court extended the *Bivens* remedy, holding that the Cruel and Unusual Punishments
Clause of the Eighth Amendment also provides an implied cause of action for damages for federal
jailers' failure to provide adequate medical treatment to a prisoner.  *Id.* at 19–21.  *See also Davis
v. Passman*, 442 U.S. 228 (1979) (implying a damages remedy under the equal protection
component of the Fifth Amendment's Due Process Clause).  Since *Carlson*, however, the Court
has imposed substantial limits on implied damages remedies under the Constitution.  Most
recently, in *Abbasi*, the Court established a stringent new test for extending the *Bivens* cause of
action to new contexts and made clear that "expanding the *Bivens* remedy is now a 'disfavored'
judicial activity."  137 S. Ct. at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

In the interim between *Carlson* and *Abbasi*, this Court has extended the *Bivens* remedy on
occasion, and in circumstances arguably relevant to Gonzalez's claims in the instant appeal.  In
the Fifth Amendment context, for example, we authorized such a remedy where a prisoner alleged
that federal jailers deprived him of procedural due process.  *See Tellier v. Fields*, 280 F.3d 69 (2d
Cir. 2000).  The parties have briefed and argued the question whether *Abbasi* abrogates our
precedent extending the *Bivens* cause of action beyond the three contexts of *Bivens, Davis,* and
*Carlson*.  We need not address that question, however, to resolve the instant case.  Here, even
assuming *arguendo* that Gonzalez has a valid cause of action after *Abbasi*, the Defendants are
entitled to qualified immunity, dooming his Due Process and Eighth Amendment claims.

3

Qualified immunity will defeat a federal claim "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ricciuti v. Gyzenis*, 834 F.3d 162, 167 (2d Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). While qualified immunity "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (internal quotation marks omitted). Gonzalez has failed to show any violation of his clearly established constitutional rights under either Amendment. Accordingly, his claims were properly dismissed.

## A. *Fifth Amendment*

Gonzalez argues that Defendants violated the Fifth Amendment by denying him the process due in connection with his administrative detention. Prison officials seeking to place an inmate in solitary confinement must provide the inmate with "some notice of the charges against him," "an opportunity to present his views to the prison official[s]," and "an informal, nonadversary evidentiary review" of the grounds for his detention. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983). Once detention has begun, the officials must "engage in some sort of periodic review" of the confinement, taking into account a "wide range of administrative considerations" like "prison conditions" and ongoing "investigation[s]." *Id.* at 477 n.9. To be "meaningful," this review must consider whether a "justification" for administrative detention "exists at the time of the review or will exist in the future, and consider new relevant evidence as it becomes available." *See Proctor v. LeClaire*, 846 F.3d 597, 610-11 (2d Cir. 2017).

The record here does not reflect any conduct by Defendants sufficient to violate Gonzalez's clearly established due process rights. Gonzalez's confinement began because he violently assaulted another inmate. Upon his transfer to MDC, White issued an administrative detention

4

order detaining Gonzalez "for security purposes" and because Gonzalez's ultimate status was "pending captain's review." App. 357. Gonzalez received a copy of that order at 10:00 p.m. that night. Three days later, Barrere reviewed Gonzalez's file and continued Gonzalez's detention because Gonzalez was a "high security" inmate. Sp. App. 6. For approximately the next three weeks, Barrere reviewed Gonzalez's records on a weekly basis. After Barrere was reassigned, Ortiz carried out the required weekly reviews. Every thirty days, LoPresti reviewed Gonzalez's status at hearings that Gonzalez himself attended. Furthermore, Hasty reviewed Gonzalez's status at weekly meetings attended by Sherman, LoPresti, Barrere, and Ortiz. No clearly established law could have alerted Defendants that they might violate the Fifth Amendment merely by detaining Gonzalez in accordance with the relevant BOP regulations, or that the levels of review required by those regulations were constitutionally deficient.

Gonzalez attempts to cast doubt on this documentary evidence principally by relying on his own attestations in his deposition. But summary judgment cannot be defeated by the "mere existence of a scintilla of evidence" supporting the non-movant's position, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), especially when that evidence derives from the non-movant's own "contradictory and incomplete testimony" lacking "any corroborating evidence in the record," *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005). Gonzalez at several points in his deposition admitted (or at least acknowledged the possibility) that the meetings and reviews required by BOP regulations did occur. Additionally, Gonzalez attempts to discredit LoPresti's review records by citing LoPresti's prior conviction for falsification of documents. But that conviction involved LoPresti's attempt to conceal evidence of his physical altercation with an inmate, a vastly different set of circumstances that does not justify a reasonable inference that LoPresti fabricated the routine review forms at issue here.

5

Most of Gonzalez's remaining evidence regarding his due process claim is proffered to show that, even if reviews did occur, they were not "meaningful." *See Proctor*, 846 F.3d at 609. Gonzalez relies on deposition testimony from Ortiz, Barrere, and LoPresti stating that he would not have been released without Warden Hasty's say-so. But this testimony simply establishes that Warden Hasty retained the authority to overrule his subordinates, not that those subordinates failed to exercise their own independent judgment as to Gonzalez's case. Furthermore, the fact that MDC officials discussed the status of some several dozen SHU inmates in periodic hour-long meetings, does not justify an inference that those reviews were not meaningful, much less that Gonzalez's clearly established due process rights were violated. Indeed, the determinations to be made in some—perhaps many—of these reviews may have been obvious given the inmates' past or recent conduct. For these reasons, no reasonable jury could have found that Defendants violated Gonzalez's clearly established rights under the Due Process Clause.

## B. *Eighth Amendment*

Gonzalez next claims that the conditions of his confinement violated the Eighth Amendment. Such a claim entails both objective and subjective components. First, the alleged deprivation must be objectively "sufficiently serious," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), meaning that the prisoner must have been denied "the minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Eighth Amendment requires prison officials to provide for an inmate's "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety," *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (internal quotation marks omitted), and jailers may not expose a prisoner to "an unreasonable risk of serious damage to his future health," *id.* at 35. Second, the prison officials must have acted with a "sufficiently culpable state of mind," *Wilson*, 501 U.S. at 297, which in conditions-of-confinement cases entails "deliberate indifference" to inmate health or safety, *id.* at 302–03.

6

Gonzalez can identify no clearly established law under which the conditions of his confinement at MDC violated this standard.[1] For purposes of qualified immunity, rights are clearly established only if a court can "identify a case where an officer acting under similar circumstances" was held to have violated the Constitution. *White*, 137 S. Ct. at 552. Gonzalez claims that his cell at MDC was unsanitary and that he received only one new mop in response to an informal grievance he filed. But no clearly established law states that these conditions violate the Eighth Amendment. *Cf. Gaston v. Coughlin*, 249 F.3d 156, 165 (2d Cir. 2001) (reversing grant of summary judgment for Eighth Amendment claim where "mice were constantly entering [plaintiff's] cell," which was "filled with human feces, urine, and sewage water" for consecutive days). Gonzalez claims that he was given inadequate clothing to protect him from MDC's "cold temperatures," but that allegation does not constitute a clearly established Eighth Amendment violation either. *Cf. Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988) (reversing grant of summary judgment for Eighth Amendment claim where, *inter alia*, prisoner alleged that he was exposed for three months to temperatures so low that ice formed in toilet bowl). Nor has Gonzalez identified any case establishing that the provision of soiled clothing or limited exercise time, without more specifics, violates the Eighth Amendment.

Prison officials may violate the Eighth Amendment by exposing a prisoner to "an unreasonable risk of serious damage to his future health," *Helling*, 509 U.S. at 35, such as where officials "ignore medical conditions that are very likely to cause serious illness and needless suffering in the future." *Smith v. Carpenter*, 316 F.3d 178, 188 (2d Cir. 2003) (internal quotations omitted). Accordingly, Gonzalez alleges that BOP officials: (1) denied him dental hygiene

---

[1] Gonzalez's allegations regarding his treatment at MCC are irrelevant to this appeal. Defendants LoPresti, Barrere, Ortiz, White, and Sherman were not employed by MCC when the conduct in question occurred. And given Hasty's reassignment from MCC to MDC on August 13, 2000, any claims against Hasty for his MCC conduct are barred by the three-year statute of limitations applicable to *Bivens* claims. *See Gonzalez v. Hasty*, 802 F.3d 212, 217 (2d Cir. 2015).

products, causing dental issues that ultimately required surgery three years after his release from the SHU; and (2) provided him with "sneakers" that were "slip-on and had no laces," "[a]s a direct result of" which he later "fell and severely injured" himself. App. 520. The district court rightly rejected these "conclusory" claims as "not objectively serious enough to raise an Eighth Amendment violation." Sp. App. 33. Nothing in the record suggests a reasonable inference that the alleged denial of dental care and shoelaces was "very likely" to result in "serious illness and needless suffering." *Smith*, 316 F.3d at 188 (internal quotation marks omitted). At a minimum, no clearly established law holds that an Eighth Amendment violation arises where prison officials provided an inmate with toothbrush, toothpaste, and unlaced slip-on shoes, and the inmate suffered injuries.

Finally, Gonzalez has failed to make out the subjective component of his Eighth Amendment claim. A *Bivens* plaintiff cannot rely on *respondeat superior* to establish the liability of defendants; instead, he must prove that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Here, Gonzalez must prove that each defendant acted with the "deliberate indifference" to inmate welfare required for an Eighth Amendment violation. *Wilson*, 501 U.S. at 302–03. Yet Gonzalez has not produced evidence that any of the individual defendants had specific knowledge of the alleged constitutional violations at issue. Gonzalez points to numerous instances in which he complained about his treatment to BOP officials, but he never specifies "which conditions [he] relayed to each defendant, much less the defendant's response." Sp. App. 33. That absence of evidence precludes a reasonable inference that any defendant acted with deliberate indifference to the allegedly unconstitutional conditions of Gonzalez's confinement.

*       *       *

8

We have considered all of Gonzalez's remaining arguments and find them to be without merit.   For the foregoing reasons, the order of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk